## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **JEFFREY A. PLANCHARD, M.D.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:  21-CV-00551** |
| | ) | |
| **USA HEALTHCARE MANAGEMENT,** | ) | **JURY DEMAND** |
| **LLC, USA HEALTH D/B/A** | ) | |
| **UNIVERSITY HOSPITAL, DENNIS** | ) | |
| **WADE HUTCHENS, MD, and** | ) | |
| **ANDREW PRICE,** | ) | |
| **Defendants.** | ) | |
| | ) | |

## AMENDED COMPLAINT

**COMES NOW** JEFFREY A. PLANCHARD, M.D., by and through his

attorneys Deborah A. Mann and Christine Hernandez of the Hernandez &

Associates Firm, LLC, and hereby complains against Defendants USA

HEALTHCARE MANAGEMENT, LLC, USA HEALTH D/B/A UNIVERSITY

HOSPITAL, DENNIS WADE HUTCHENS, MD, and ANDREW PRICE as

follows:

### NATURE OF THE CASE

This is an action to recover damages under 42 U.S.C. §§ 2000e et. seq. (Title

VII) and 42 U.S.C. § 1981 and § 1983 for race and religious discrimination

suffered by Plaintiff while employed by Defendants, which ultimately led to his

wrongful termination and "black-balling" in the local medical community and for various state remedies arising therefrom.

PARTIES

1.  Plaintiff JEFFREY A. PLANCHARD, M.D. is a citizen of Alabama and lives in Mobile, Alabama.  Prior to the wrongful termination of his employment, Plaintiff worked as an anesthesiologist for Defendants USA HEALTHCARE MANAGEMENT, LLC and USA HEALTH d/b/a UNIVERSITY HOSPITAL under the direct supervision and authority of Defendants DENNIS WADE HUTCHENS, MD, and ANDREW PRICE.

2. Defendant USA HEALTHCARE MANAGEMENT, LLC is an independent contractor created as an independent public limited liability company for the purpose of transferring administrative and clinical employees, including those at USA HOSPITAL, out of participation in the employment and retirement state system into a significantly less expensive private system, and is principally located and doing business in Mobile, Alabama.  Plaintiff is informed and believes Defendant is engaged in an industry affecting commerce, employs in excess of 500 people and has employed over five hundred persons for the requisite duration under 42 U.S.SC. § 1981a(b).

3. Defendant USA HEALTH d/b/a/ UNIVERSITY HOSPITAL claims to operate for the purpose of promoting the public health mission of the

University of South Alabama, which includes owning and operating medical clinics and other healthcare facilities, including the University Hospital, providing inpatient and outpatient care for patients in need of professional medical care and is principally located and doing business in Mobile, Alabama.  Plaintiff is informed and believes Defendant is engaged in an industry affecting commerce, employs in excess of 500 people and has employed over five hundred persons for the requisite duration under 42 U.S.SC. § 1981a(b).

4. IF it is determined that either USA HEALTHCARE MANAGEMENT, LLC or USA HEALTH d/b/a/ UNIVERSITY HOSPITAL were at any time relevant hereto operating as agencies of the State of Alabama, which Plaintiff specifically contests, either or both were at all times relevant hereto operating under color of law through their representatives DENNIS W. HUTCHENS, MD and ANDREW PRICE, acting in their official capacities in violation of 42 U.S.C. § 1983 in such a manner as to cause the Plaintiff to be deprived of his civil rights protected by 42 U.S.C. § 1981.

5. DENNIS W. HUTCHENS, MD is a citizen and resident of Mobile County in the state of Alabama and is the Chief of the Anesthesiology Division at USA HEALTH d/b/a UNIVERSITY HOSPITAL, is a management employee with USA HEALTHCARE MANAGEMENT, LLC and was

Plaintiff JEFFREY A. PLANCHARD, MD's direct supervisor at all times relevant hereto. Defendant is subject to the jurisdiction of this Court and is sued individually and in his official capacity as to Plaintiff's discrimination claims protected by 42 U.S.C. § 1981, where the official capacity claims are brought pursuant to 42 U.S.C. § 1983.

6. ANDREW PRICE is a citizen and resident of Mobile County in the state of Alabama, is a management employee with USA HEALTHCARE MANAGEMENT, LLC and is the administrator of the Division of Anesthesiology at USA HEALTH d/b/a UNIVERSITY HOSPITAL. Defendant is subject to the jurisdiction of this Court and is sued individually and in his official capacity as to Plaintiff's discrimination claims protected by 42 U.S.C. § 1981, where the official capacity claims are brought pursuant to 42 U.S.C. § 1983.

<u>JURISDICTION AND VENUE</u>

7. This action to redress the deprivation of Plaintiff's civil rights arises under the laws of the United States, specifically 42 U.S.C. § 2000e, *et. seq.* and 42 U.S.C. §§ 1981 & 1983. This court has jurisdiction to hear the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1343.

8. This court has federal supplemental jurisdiction to hear the subject matter of the included state law claims which are part of the same case or controversy

and arise from the same facts, or involve similar occurrences, witnesses or evidence pursuant to 28 U.S.C. § 1367.

9.  The events described in this action predominantly occurred in Mobile, Alabama.  This court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b).

FACTS SUPPORTING CLAIMS

10. Plaintiff JEFFREY PLANCHARD, M.D. ("Dr. PLANCHARD") is genetically part of an "ethnically and physiognomically distinctive subgrouping of *homo sapiens*" in that he is a Jewish person born to a 100% Jewish mother, was raised in the Jewish faith and identifies as a Hebrew.

11. Dr. PLANCHARD is a highly skilled Anesthesiologist.

12. In addition to working full time as an anesthesiologist at Springhill Hospital in 2020, Dr. PLANCHARD also worked as a traveling anesthesiologist with LocumsTenes.com and similar agencies during his time off, which employment provided Plaintiff with significant income.

13. Taylor Young of LocumTenes.com presented Dr. PLANCHARD's CV to Defendants on or about December 3, 2020, as a potential anesthesiologist locum tenens candidate.

14. In December of 2020, Defendants did not have a sufficient number of anesthesiologists on staff at USA HOSPITAL.

15.  Locum tenens anesthesiologists cost hospitals more money than full time hospital staff anesthesiologists.

16. On or about December 3, 2020, Defendants USA HEALTHCARE MANAGEMENT, LLC and USA HEALTH d/b/a UNIVERSITY HOSPITAL, though their agent ANDREW PRICE ("PRICE"), Administrator with USA HEALTHCARE MANAGEMENT, LLC, ("USA HEALTHCARE"), USA HEALTH d/b/a UNIVERSITY HOSPITAL, ("USA HEALTH" or "USA HOSPITAL"), began recruiting Dr. PLANCHARD on behalf of Defendants for a full-time staff anesthesiologist position at USA HOSPITAL.

17. As an inducement for Dr. PLANCHARD to accept employment with Defendants USA HEALTHCARE and USA HEALTH, PRICE suggested Dr. PLANCHARD could restart the long dormant Anesthesiology Residency program at USA HOSPITAL.

18.  On or about December 3, 2020, Plaintiff Dr. PLANCHARD spoke on the telephone with USA HOSPITAL chief of anesthesiology DENNIS WADE HUTCHENS, M.D. ("HUTCHENS") for over an hour about the prospect of Plaintiff joining Defendants' anesthesiology team.

19.  During their hour-long telephone call, Dr. HUTCHENS seemed genuinely enthusiastic about Plaintiff joining the anesthesiology team at USA HOSPITAL.

20.  During their lengthy telephone conversation, Dr. HUTCHENS agreed that USA HOSPITAL needed a residency program and that he would be happy to help Plaintiff start one if he joined the USA HOSPITAL anesthesiology staff.

21.  During this same telephone conversation, Dr. HUTCHENS stated he believed Plaintiff Dr. PLANCHARD would be a great fit for USA HOSPITAL.

22.  On or about December 4, 2020, Defendants' agent Mr. Andrew PRICE called Plaintiff to confirm that he spoke with Dr. HUTCHENS and to set up an in-person meeting/interview for Plaintiff with Dr. Chang, Defendants' USA HEALTHCARE MANAGEMENT and USA HOSPITAL Chief Medical Officer for December 9, 2020.

23.  On or about December 9, 2020, Plaintiff met with and interviewed with Dr. Chang for approximately 2 hours and 50 minutes.  Andrew PRICE, D. Wade HUTCHENS, Chief Anesthesiologist and Dr. Kai Rodning, M.D. were also present.

24. At the end of his interview on December 9, 2020, Mr. Andrew PRICE told Plaintiff Dr. PLANCHARD as they walked out to expect a contract offer "prior to the holidays."

25. During his interview on or about December 9, 2020, Plaintiff Dr. PLANCHARD wore a Star of David necklace, signifying his Jewish faith and heritage, as he does on all formal occasions.

26. Throughout his interview the Star of David necklace was open, obvious and readily visible to all present at the interview meeting on December 9, 2020.

27. Although Dr. HUTCHENS, Chief Anesthesiologist, had previously been cordial, jovial and friendly towards Plaintiff Dr. PLANCHARD, his entire attitude toward Plaintiff shifted after observing the Star of David necklace at the in-person interview and discovering Plaintiff was Jewish.

28. Immediately upon discovering that Plaintiff Dr. PLANCHARD was Jewish, Chief Anesthesiologist Dr. HUTCHENS became standoffish and barely spoke a word to Plaintiff.

29. Defendants failed to offer Plaintiff a contract by the holidays as represented.

30. Plaintiff is informed and believes Defendants needed to expand their anesthesiology staff at USA HOSPITAL in December, 2020 and January, 2021.

31. Plaintiff is likewise informed and believes there is a shortage of anesthesiologists in the Mobile, Alabama area.

32. Finally, after several inquiries by Plaintiff Dr. PLANCHARD, in January 2021, Defendants offered Plaintiff a two-month Locum Tenens position at USA Hospital at the insistence of Dr. HUTCHENS, rather than the long-term, full-time contract discussed at his interview.

33. During the delay in receiving the promised offer from USA HOSPITAL, Plaintiff scheduled out of town traveling anesthesiology work in February and March of 2021.

34. In January of 2021, Chief Anesthesiologist Dr. HUTCHENS presented Plaintiff Dr. PLANCHARD with an offer letter and a draft contract indicating the contract would be effective for permanent employment after the successful completion of the Locums Tenens assignment with USA HOSPITAL to the satisfaction of the "Department of Anesthesiology," a legally non-existent entity.

35.  The parties eventually agreed Dr. PLANCHARD would work as a Locums

Tenens anesthesiologist but would be employed full time upon signing his

contract.

36.  On February 1, 2021, Dr. PLANCHARD started work at USA

HOSPITAL and was immediately subjected to a hostile workplace because

he was Jewish.

37.  On February 1, 2021, Plaintiff Dr. PLANCHARD arrived one hour early to

work to meet up with his direct supervisor, Dr. HUTCHENS, and obtain a

tour of the facility.

38.  Upon seeing Plaintiff, Dr. HUTCHENS instructed Dr. PLANCHARD to

"only document standard work hours, as overtime was discouraged" and

"not all of us are about the money." The stereotypical Jew is only "about the

money."

39.  When Plaintiff Dr. PLANCHARD specifically asked for assistance with

the computer system, which Plaintiff Dr. PLANCHARD was required to use

as an integral part of his job, Dr. HUTCHENS, Plaintiff's direct supervisor,

responded with grunts, declined to assist Dr. PLANCHARD and left the

room.

40. Medical Director Dr. Kai Rodning assisted Dr. PLANCHARD with the instruction and implementation of the computer system education and training needed for the job when Dr. HUTCHENS refused to do it.

41. At all times Dr. HUTCHENS was openly and publicly rude, condescending and intentionally abrasive toward Plaintiff with the other Defendants' acquiescence.

42. Plaintiff's direct supervisor Dr. HUTCHENS continually rebuffed Plaintiff creating an ongoing hostile workplace simply because Plaintiff was Jewish. For example, when Plaintiff Dr. PLANCHARD would join Dr. HUTCHENS in the lounge at lunch, Dr. HUTCHENS would disengage from conversation at Plaintiff's arrival and would move to a separate table in the room and eat elsewhere.

43. One time when Dr. PLANCHARD was sharing his 23 and Me Jewish Ancestry DNA information with Dr. Rodgrigo, Dr. HUTCHENS interrupted the conversation appearing visibly disgusted and ordered Plaintiff Dr. PLANCHARD to report to the OR and start an anesthetic on a case.

44. Dr. HUTCHENS' directive was ultimately determined to be about a case that had already begun with another anesthesiologist.

45. Plaintiff was not needed nor assigned to this case, which had already been going for approximately 30 minutes.

46. On or about February 15, 2021, Plaintiff Dr. PLANCHARD overheard his supervisor Dr. HUTCHENS and CRNA Chuck Musselwhite loudly discussing Dr. PLANCHARD's employment status.

47. Dr. HUTCHENS informed the CRNA that Mr. Andrew PRICE told Dr. HUTCHENS that USA Hospital was going to hire Plaintiff "so long as he wasn't an unmitigated disaster."

48. Plaintiff's supervisor Dr. HUTCHENS, who was close to retirement age at the time, followed up his first comment by loudly stating that this was "an awfully low bar for the KIKE they hire to replace me."

49. "KIKE" is a derogatory and humiliating term for a Jewish person.

50. Although Plaintiff felt humiliated being publicly labeled a "KIKE" by his supervisor HUTCHENS to a co-worker for anyone near to hear, Dr. HUTCHENS and CRNA Chuck Musselwhite found humor in the derogatory commentary about Plaintiff Dr. PLANCHARD's race and religion.

51. On another occasion, Plaintiff remarked that a pre-op patient was so thin she looked like she had just escaped from a concentration camp. CRNA Mike Tomlinson, who knew Plaintiff was Jewish asked, "Why? Does she have a big nose?"

52. Negative stereotypes of Jewish people portray them with oversized noses.

53.  CRNA Mike Tomlinson, with Defendants' acquiescence repeatedly
mocked Plaintiff Dr. PLANCHARD telling him he only made it to medical
school because he "inherited Jew gold."

54.  Another USA HOSPITAL anesthesiologist Dr. Aston Archibald, often
derided Plaintiff and his accomplishments merely because he was Jewish.

55.  For example, in February of 2021, Dr. Archibald told Dr. PLANCHARD
"Your people have had incredible success in our country despite being few
in number.  Jews look out for each other and make sure you all get a leg up."

56.  Dr. Archibald later told a group of doctors and CRNA's in front of
Plaintiff, that the Italian mafia "never killed their own, that's the movies.
They'd hire Jews as their assassins.  Look it up.  Jews are some of the most
cold-blooded killers around."

57.  Suggesting that an anesthesiologist, a doctor that literally bears
responsibility for the life of a patient during surgery, belongs to a group of
"cold-blooded killers" is insulting and horrifying.

58.  Plaintiff Dr. PLANCHARD felt humiliated when one of his coworkers
suggested he belonged to a group of cold-blooded killers.

59.  Dr. HUTCHENS, Plaintiff's direct supervisor, regularly undermined Dr.
PLANCHARD's decision making and negatively commented on his
employment for no reason other than his religion and race/ethnicity.

60. Throughout the month of February, Plaintiff asked Mr. PRICE about the status of the permanent contract. Each time, Mr. PRICE deferred to the judgment of Dr. HUTCHENS, who said he wanted every faculty member to meet Dr. PLANCHARD, despite that Dr. HUTCHENS' requirement was not normal procedure.

61. Despite stating that he wanted Plaintiff to meet the other faculty members, Dr. HUTCHENS declined to assist in introductions and continually made inappropriate antisemitic and other disparaging comments to and about Dr. PLANCHARD.

62. In February of 2021, in an effort to understand the delay with his permanent contract, Plaintiff asked Mr. Andrew PRICE if there had been any negative feedback received from the faculty, to which Mr. PRICE responded "none."

63. When Plaintiff then asked Mr. PRICE why his employment had to be unanimous, Mr. PRICE inquired if Dr. PLANCHARD felt discriminated against.

64. Although Dr. PLANCHARD did believe he was being discriminated against, he believed a positive response would have a negative impact on his employment so he instead sidestepped the question and merely inquired about the delay.

65.  Each of the Defendants at all times ratified the discriminatory treatment of

Plaintiff Dr. PLANCHARD which they knew or should have known about.

66.  After Dr. Saroj Shah, the only Indian member of the Anesthesiology

division at USA HOSPITAL, had to leave the country for several weeks due

to a death in the family, Plaintiff was assigned to cover Dr. Shah's usual role

as anesthesiologist for outpatient endoscopy two floors up from the rest of

the ORs, which was akin to exile and intended to demean Plaintiff to the

staff.

67. Dr. HUTCHENS remarked that Dr. Shah had been assigned outpatient

endoscopy because "she was not qualified to cover anything more difficult."

68.  Dr. HUTCHENS suggested Dr. PLANCHARD, who trained at the

prestigious Cleveland Clinic, was no more qualified than he believed Dr.

Shah to be, despite that Plaintiff was the only member of the staff certified in

echocardiography, and the only main campus physician so trained.

69.  On or about February 28, 2021, when Plaintiff approached Dr.

HUTCHENS to work out the details of leaving for his pre-existing and

higher paying Weatherby short-term traveling anesthesiology employment

commitment during the last two weeks of March, Dr. HUTCHENS

immediately offered Plaintiff his permanent contract and made it effective as

of the same date.

70. Mr. PRICE agreed to the permanent contract but insisted that it would be given in exchange for Plaintiff canceling the March Weatherby assignment knowing Plaintiff did not have the minimum 30 days required to cancel.

71. In reliance on the offer of permanent employment and believing he had no other option, Plaintiff Dr. PLANCHARD canceled the other Weatherby assignment without the required 30 days' notice, which negatively impacted his relationship with the other hospital as well as Weatherby.

72. Weatherby had been a source of significant income prior to Plaintiff's untimely cancellation at the demand of Defendants.

73. The parties entered into an employment contract which by its terms became effective on February 28, 2021.

74. Paragraph 5.2 of the contract provided terms under which Defendants could immediately terminate Plaintiff, notice of which would be given in writing.

75. Terms pertaining to immediate termination involved egregious conduct by the physician such license loss or loss of ability to work with private and government insurance systems.

76. Termination for cause, pursuant to paragraph 5.3 of the contract, required written notice of intent to terminate citing the grounds therefor and required a reasonable period of time to remediate the "cause", not to exceed 30 days.

77.  Defendants reserved the right to terminate Plaintiff Dr. PLANCHARD without cause upon at least ninety days advance written notice in paragraph 5.4.

78.  Paragraph 5.5 of the contract provided any termination of Plaintiff would be done in consultation with the Supervisor and the Chief Medical Officer (Dr. Chang).

79.  A short time after executing his permanent contract in February of 2021, Plaintiff had the opportunity to converse with Dr. Joseph Rodrigo, one of the anesthesiologists at U.S.A. Hospital who had been a medical director in South Carolina.

80.  Dr. PLANCHARD asked if Dr. Rodrigo had ever had to fire anyone.  Dr. Rodrigo replied only once.  Plaintiff asked if it was "drugs" but Dr. Rodrigo responded, "Oh no, not that.  He was a great clinician.  It's just his personality.  He was argumentative, loud, neurotic.  He was a Jewish guy. You know how they can be.  Well, no one liked him, and administration was looking for a reason."

81.  Upon hearing Dr. Rodrigo's comment, Plaintiff began to understand the extent to which antisemitism pervaded the USA HOSPITAL system.

82.  During his entire tenure with USA HOSPITAL, Plaintiff Dr. PLANCHARD received only positive feedback.

83. On or about March 24, 2021, Plaintiff received a telephone call offering him the chance to interview for a position at Providence Hospital with a minimum starting salary of $420,000.

84. Plaintiff Dr. PLANCHARD declined to interview because he was under contract with and committed to his job with Defendants.

85. On or about March 26, 2021, Mr. PRICE told Dr. PLANCHARD verbally during a telephone call that he could cancel his Marketplace health insurance as his full-time benefits would start April 1, 2021.

86. During that same telephone call on March 26, 2021, Mr. PRICE told Plaintiff he had received no negative feedback or complaints from staff about Dr. PLANCHARD.

87. In response to an email, on March 26, 2021, Mr. Andrew PRICE told Plaintiff that although it was too late for 2021, Defendants would put Plaintiff on the list to pay Dr. PLANCHARD's Society dues "for next year."

88. Based on the given feedback, Plaintiff felt comfortable enough on March 29, 2021, to ask Mr. Andrew PRICE for proof of income for a mortgage application.

89. The very next day on March 30, 2021, Mr. PRICE, Director of Anesthesia, summoned Plaintiff Dr. PLANCHARD to his office.

90. Dr. HUTCHENS was present in Mr. PRICE's office when Plaintiff arrived.

91.  Despite being scheduled to work full time hours throughout the month of
April, Dr. HUTCHENS and Mr. PRICE informed Plaintiff that day, March
30, 2021, would be his last day and they immediately collected his badge.

92.  Dr. HUTCHENS and Mr. PRICE then simply stated Plaintiff Dr.
PLANCHARD was a "poor fit for the hospital."

93.  Dr. HUTCHENS and Mr. PRICE failed to comply with the terms of
Plaintiff's contract which required any termination without cause to be in
writing with 90 days' notice.

94.  Plaintiff's contract further required that CMO Dr. Chang be consulted
about any termination.

95.  When Plaintiff Dr. PLANCHARD inquired as to whom Dr. HUTCHENS
and Mr. PRICE had consulted about his termination, Dr. HUTCHENS
responded, "those people in Administration who make such decisions."

96.  When Plaintiff inquired whether Dr. Chang had been consulted, Dr.
HUTCHENS replied, laughing, "You're welcome to call him."

97.  When Plaintiff later contacted Dr. Chang, Dr. Chang confirmed he had not
been consulted as he was out of town due to a death in the family.

98.  Failure to confer with Dr. Chang about termination was a violation of
hospital procedure and Plaintiff's contract.

99.  Plaintiff was so shocked, upset and caught off guard by the treatment and

lack of professionalism of these two superiors that he began to cry, stating

he had a family to support and they needed the benefits he had been told to

cancel just days before in reliance upon Mr. PRICE's promise that his

U.S.A. Heath benefits would start April 1, 2021.

100.     Dr. HUTCHENS openly mocked and ridiculed Plaintiff Dr.

PLANCHARD pointing at Plaintiff while looking at Mr. PRICE and

laughing, stating, "Be an adult!" and "Look at him, Andy, he has no insight

at all!"

101.     At all times relevant thereto, Mr. PRICE, Director of Anesthesiology

and Administrator for Defendants USA HEALTHCARE and USA

HEALTH condoned and even encouraged Dr. HUTCHENS' conduct.

102.     "Insight" is a term used in psychiatry for knowledge of one's

condition.

103.     Dr. HUTCHENS used the term "insight" in a derogatory manner

directed toward Plaintiff, laughing, demonstrating the intent to demean and

humiliate Plaintiff Dr. PLANCHARD.

104.     When Plaintiff asked what he meant by insight, Dr. HUTCHENS

responded that "no one in this hospital has a positive opinion of you,"

despite that Plaintiff has childhood friends and colleagues who work in the hospital who remain friendly.

105.     Dr. HUTCHENS' comment directly contradicted the feedback Plaintiff had previously received from Mr. PRICE.

106.     Dr. HUTCHENS further stated, without rational basis, that he couldn't trust Plaintiff Dr. PLANCHARD to take calls by himself at night despite that no incidents related to Plaintiff's medical judgment had been mentioned.

107.     At this point in time, no statements, incidents or error, or any other communications were made to Plaintiff Dr. PLANCHARD in regard to any issue related to his performance, there had been no performance review, there had been no write up, there had been no negative reports of which Dr PLANCHARD had been made aware throughout either Plaintiff's temporary period or after he accepted his permanent contract.

108.     Dr. HUTCHENS' comments were so outlandish considering Plaintiff is a Board-Certified Anesthesiologist who had taken night call every five days during his prior three years at Springhill Hospital and had trained at the Cleveland Clinic without issue.

109.    At all times Plaintiff believed Dr. HUTCHENS could only have intended his comments, which contradicted everything Plaintiff had been told to date, as public insults.

110.    Throughout the March 30, 2021, meeting, Dr. HUTCHENS, with the approval of Mr. PRICE, both of whom at all times represented USA HEALTHCARE and USA HOSPITAL continued to laugh at and mock Dr. PLANCHARD's tears and Plaintiff's goal to restart the residency program.

111.    After being outrageously mocked and humiliated, Plaintiff was told the meeting was over and while he prepared to leave, apparently not quickly enough, Dr. HUTCHENS continued to laugh and mock stating, "I'd hate to have to call security."

112.    Believing his treatment to be the product of racial and religious discrimination, especially from his direct supervisor Dr. HUTCHENS, Plaintiff Dr. PLANCHARD wrestled with the idea of making a report.

113.    At all times Plaintiff suspected reporting the discrimination he had faced would be futile since Dr. HUTCHENS seemed to talk for all of the Defendants and attended every meeting involving Dr. PLANCHARD.

114.    At all times Plaintiff further suspected reporting the discrimination he had faced would be futile since Mr. PRICE, who had the ability to intervene,

stood by while others, including Dr. HUTCHENS mocked and ridiculed Plaintiff.

115.     Plaintiff finally overcame the intimidation he felt and on March 31, 2021, Dr. PLANCHARD told Mr. PRICE that he had been a victim of widespread discrimination.

116.     While  Mr. PRICE indicated Defendants took complaints of discrimination seriously, rather than initiating an official investigation, Mr. PRICE said he would set up a meeting, which would include Defendants' attorney.

117.     Believing he should not attend any meetings with Defendants' counsel present unless he was also represented, Dr. PLANCHARD declined to attend.

118.     On or about April 1, 2021, Mr. PRICE verbally confirmed to Plaintiff Dr. PLANCHARD that he was going to be terminated without cause as a "poor fit".

119.     In response, Dr. PLANCHARD requested the written 90-day notice guaranteed by his employment contract which had an effective date of February 28, 2021.

120.     In retaliation for Plaintiff opposing Defendants' unlawful employment practice, i.e. discrimination, complaining about discrimination

to Mr. PRICE and requesting Defendants follow their own procedure and Plaintiff's rights pursuant to his contract, Defendants made false and defamatory statements about Plaintiff.

121.     Defendants falsely accused Plaintiff of being bipolar,.

122.     Defendants told Paul Hude, a CRNA who had worked with Dr. PLANCHARD at both Springhill Hospital and at U.S.A. Hospital and who had been out of town when Defendants terminated Plaintiff that Plaintiff was bipolar as justification for terminating him.

123.     Defendants falsely reported to Adam Mason, DO, an anesthesiologist at Mobile Infirmary and Plaintiff's former supervisor at Springhill that Dr. PLANCHARD was removed from USA Hospital by security.

124.     Most damaging of all, Defendants sent out false and defamatory letters to the three companies that collectively held Dr. PLANCHARD's hospital privileges elsewhere.

125.     LocumTenens.com, the agency that was paying but not employing Dr. PLANCHARD on March 30, 2021, was falsely informed, among other false accusations, that Plaintiff had given blood to a Jehovah's Witness patient.

126.     Plaintiff is informed and believes Defendants sent similar letters to CHG Healthcare, CompHealth and Weatherby Locums.

127.     None of these companies have worked with Dr. PLANCHARD since receiving Defendants' false and defamatory letters.

128.     Further, Plaintiff was left with no hospital privileges anywhere, inhibiting his ability to earn a living.

129.     After being summarily dismissed and without hospital privileges, Plaintiff was forced to "scramble" to find short term, temporary work while he searched for permanent employment.

130.     Plaintiff is informed and believes Defendants have engaged in other defamatory and slanderous communications, in effect "black-balling" Dr. PLANCHARD in the local and regional areas.

131.     Despite the Mobile and surrounding areas having a shortage of anesthesiologists, Plaintiff was unable to secure another position locally despite months of earnest searching.

132.     Plaintiff is informed and believes Defendants continued to disparage Plaintiff's character and refused to provide references or other customary information in order to sabotage his ability to find employment, verbally slandering Plaintiff to hospitals in Fairhope, AL, Biloxi, MS and Pensacola, FL, among others.

133.     At all times related hereto, Defendants continued to discriminate and retaliate against Plaintiff Dr. PLANCHARD by providing false information

to prospective employers or refusing to offer information needed for purpose

of credentialling because he is Jewish and because he complained about

discrimination by Defendants.

134.      In fact, Plaintiff had to apply to hospitals more than 150 miles away

in order to secure a full-time employment contract for January of 2022.

135.      Defendants fabricated a pretextual basis for terminating Plaintiff after

the fact.

136.      On April 16, 2021, Defendants sent Plaintiff Dr. PLANCHARD a

written letter of termination for cause effective that same date, i.e. April 16,

2021.

137.      The pretextual and fabricated bases for termination contrived by

Defendants were:  (a) A complaint from a pediatric patient's parent about

the treatment of her autistic child.  Dr. PLANCHARD's name did not appear

in the complaint which only listed two anesthesiologists, one "good" and

one "bad."  Dr. PLANCHARD saw the complaint but did not remember the

patient.  In a text exchange describing the complaint, Mr. PRICE called it

"no big deal."  (b)  Supposed complaints from a nurse in the GI department

which were never brought to Dr. PLANCHARD's attention and have yet to

be produced.  (c)  Supposed deficiencies in charting.  However, on March

29, 2021, Plaintiff had gone over all of his charts with the medical director,

Dr. Kai Rodning, who replied, via text that with regard to the matter, everything was "copacetic." (d)  A deliberate misrepresentation of an interaction with the aforementioned Jehovah's Witness patient.  Despite signing a form in the pre-op area refusing blood, she mentioned to Plaintiff, prior to being anesthetized, that she did not understand the term "anemia." When Dr. PLANCHARD explained the word meant a dangerously low blood count, the patient changed her mind and said she would accept blood. It then became Dr. PLANCHARD's legal responsibility to cause the consent to be updated and the patient's wishes addressed.  Dr. HUTCHENS inserted himself into the situation and took over the case.  He stated that since little blood loss was expected, changing the blood consent was unnecessary. Plaintiff deferred to Dr. HUTCHENS, his direct supervisor.  Ultimately, no blood was necessary nor given.  However, in its termination letter, USA accused Dr. PLANCHARD of going against a patient's wishes for receiving blood, the exact opposite of the truth.

138.     Pursuant to Defendants' own policy and pursuant to the contract between the parties, Plaintiff Dr. PLANCHARD should have been offered a remediation period before being terminated for cause.

139.     Defendants never offered Plaintiff the required remediation period nor were any of the pretextual bases for termination discussed with Dr.

PLANCHARD prior to the series of policy, procedure and contract defying terminations to which Defendants subjected Plaintiff.

140.     Plaintiff Dr. PLANCHARD is informed and believes Defendants have replaced Plaintiff with an anesthesiologist who is not Jewish, i.e. who is outside of Plaintiff's protected class.

141.     As a direct and proximate result of the actions of Defendants and their agents, Plaintiff has suffered financial loss as well as damage related to mental and emotional stress.

142.     Plaintiff continued to face the stress and strain of constantly searching and applying for short, temporary work opportunities, most of which required him to leave his young family for weeks at a time, from April, 2021 through November, 2021.

143.     Plaintiff has been regularly consulting with a therapist to help him work through the severe mental and emotional distress Dr. PLANCHARD experienced as a result of Defendants' treatment of him.

144.     On or about September 20, 2021, Plaintiff Dr. PLANCHARD filed a Charge of Discrimination with the Equal Employment Opportunity Commission in Mobile, AL.

145.     Plaintiff received a Dismissal and Notice of Rights from the Equal

Employment Opportunity Commission less than 90 days prior to the filing

of the Complaint in this action.

## FEDERAL CAUSES OF ACTION

### COUNT 1
### RACE DISCRIMINATION 42 U.S.C. §§ 1981 & 1983

146.     As the facts alleged in this Complaint show, Defendants USA

HEALTHCARE, USA HEALTH, HUTCHENS and PRICE discriminated

against Plaintiff because of his race in violation of 42 U.S.C. § 1981 and 42

U.S.C. § 1983.

147.     The Plaintiff Dr. PLANCHARD is a racial minority in that he is was

born to an ethnically 100% Jewish mother and based upon his Jewish

upbringing, outwardly manifests his racial affiliation by donning, among

other things, a Star of David necklace such that Defendants knew that

Plaintiff was a member of a protected class.

148.     At all times related hereto, Plaintiff was a Board-certified

anesthesiologist who had trained at the prestigious Cleveland Clinic and as

such he was qualified for the employment Defendants recruited him for in

December of 2020, especially since according to Dr. HUTCHENS,

Defendants merely sought an anesthesiologist that wasn't "an unmitigated

disaster."

149.     Upon discovering he was Jewish, Defendants intentionally discriminated against Plaintiff by, among other things, withholding the employment contract Plaintiff was told to expect prior to the 2020 holidays following his interview, requiring Plaintiff to meet more stringent criteria than other similarly situated anesthesiologists faced before offering him a permanent contract, including, but not limited to requiring unanimous consent and working temporarily as a Locums Tenens employee, requiring him to cancel pre-existing third-party agency traveling anesthesiology commitments without sufficient notice in order to receive his permanent contract and by failing to adhere to Defendants' own policies, procedures and contract obligations when terminating Plaintiff.

150.     Defendants further subjected Plaintiff to a hostile work environment by publicly mocking and humiliating Plaintiff Dr. PLANCHARD and by creating, tolerating and even ratifying anti-Semitic behavior by Plaintiff's direct supervisors and co-workers such that the workplace became permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive such as to alter the conditions of the Plaintiff's employment and create an abusive working environment.

151.     Plaintiff Dr. PLANCHARD suffered an adverse employment action when he was fired without cause on March 30, 2021, which was confirmed

on or about April 1, 2021, and for cause on April 16, 2021, none of which

conformed to Defendants written policies and procedures nor the contract

between the parties.

152.     At the time Plaintiff suffered this adverse employment action, it was

based upon racial discrimination, which was at a minimum, a motivating

factor and/or a but for cause for the adverse employment action.

153.     Plaintiff was subsequently replaced  by a person outside of his

protected class.

154.     Additionally, Plaintiff was treated less favorably than similarly

situated non-Jewish anesthesiologists who were not made to work as

Locums Tenens employees prior to being presented with their permanent

contracts, who were not mocked for being Jewish, who were not forced to

cancel prior commitments upon insufficient notice in order to receive a

formal contract and who were not told to cancel their insurance 4 days prior

to being terminated because they would be receiving benefits imminently.

155.     Any bases claimed by Defendants' for terminating Dr. PLANCHARD

are clearly pretextual in that Defendants failed to follow their own formal

policies, the articulated reasons for Plaintiff's termination were first

presented to Plaintiff in a letter sent to Plaintiff 17 days after he was told he

was being terminated "without cause" and said reasons were false and hid discrimination.

156.    To the extent any or all of the Defendants are found to be arms of the State, which claims by Defendants' Plaintiff disputes, Defendants' actions were committed under color of law.

157.    As a direct and proximate result of Defendants discriminatory actions, Plaintiff has suffered out of pocket losses, has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including health insurance and life insurance benefits.

## COUNT II
## RACE DISCRIMINATION 42 U.S.C. § 1981

158.    As the facts alleged in this Complaint show, Defendants USA HEALTHCARE, USA HEALTH, HUTCHENS and PRICE discriminated against Plaintiff because of his race in violation of 42 U.S.C. § 1981.

159.    The Plaintiff Dr. PLANCHARD is a racial minority in that he is was born to an ethnically 100% Jewish mother and based upon his Jewish identity, upbringing and heritage, outwardly manifests his racial affiliation by donning, among other things, a Star of David necklace such that Defendants knew that Plaintiff was a member of a protected class.

160.    At all times related hereto, Plaintiff was a Board-certified anesthesiologist who had trained at the prestigious Cleveland Clinic and as

such he was qualified for the employment Defendants recruited him for in December of 2020, especially since according to Dr. HUTCHENS, Defendants merely sought an anesthesiologist that wasn't "an unmitigated disaster."

161.    Upon discovering he was Jewish, Defendants intentionally discriminated against Plaintiff by, among other things, withholding the employment contract Plaintiff was told to expect prior to the 2020 holidays following his interview, requiring Plaintiff to meet more stringent criteria than other similarly situated anesthesiologists faced before offering him a permanent contract, including, but not limited to requiring unanimous consent and working temporarily as a Locums Tenens employee, requiring him to cancel pre-existing traveling anesthesiology agency commitments without sufficient notice in order to receive his permanent contract and by failing to adhere to Defendants' own policies, procedures and contract obligations when terminating Plaintiff.

162.    Defendants further subjected Plaintiff to a hostile work environment by publicly mocking and humiliating Plaintiff Dr. PLANCHARD and by creating, tolerating and even ratifying anti-Semitic behavior by Plaintiff's direct supervisors and co-workers such that the workplace became permeated with discriminatory intimidation, ridicule and insult that was

sufficiently severe or pervasive such as to alter the conditions of the
Plaintiff's employment and create an abusive working environment.

163.     At all times, Defendants HUTCHENS and PRICE personally
participated in the discriminatory conduct directed toward Plaintiff.

164.     Plaintiff Dr. PLANCHARD suffered an adverse employment action
when he was fired without cause on March 30, 2021, which was confirmed
on or about April 1, 2021, and for cause on April 16, 2021, none of which
conformed to Defendants written policies and procedures nor the contract
between the parties.

165.     At the time Plaintiff suffered this adverse employment action, it was
based upon racial discrimination, which was at a minimum, a motivating
factor and/or a but for cause for the adverse employment action.

166.     Plaintiff was subsequently replaced  by a person outside of his
protected class.

167.     Additionally, Plaintiff was treated less favorably than similarly
situated non-Jewish anesthesiologists who were not made to work as
Locums Tenens employees prior to being presented with their permanent
contracts, who were not mocked for being Jewish, who were not forced to
cancel prior commitments upon insufficient notice in order to receive a

formal contract and who were not told to cancel their insurance 4 days prior

to being terminated because they would be receiving benefits imminently.

168.     Any bases claimed by Defendants' for terminating Dr.

PLANCHARD are clearly pretextual in that Defendants failed to follow

their own formal policies, the articulated reasons for Plaintiff's termination

were first presented to Plaintiff in a letter sent to Plaintiff 17 days after he

was told he was being terminated "without cause" and said reasons were

false and hid discrimination.

169.     As a direct and proximate result of Defendants' discriminatory

actions, Plaintiff has suffered out of pocket losses, has been deprived of job-

related economic benefits, including income in the form of wages and other

job-related benefits, including health insurance and life insurance benefits,

170.     Plaintiff is further entitled to punitive damages as a result of

Defendants engaging in discriminatory practices with malice and/or with

reckless indifference to Plaintiff's federally protected rights as set forth in

the statement of facts herein.

## COUNT III
## RACE DISCRIMINATION 42 U.S.C. §§ 2000e, *et seq.*

171.     As the facts alleged in this Complaint show, Defendants USA

HEALTHCARE and USA HEALTH discriminated against Plaintiff because

of his race in violation of 42 U.S.C. §§ 2000e, *et seq.*

172.     The Plaintiff Dr. PLANCHARD is a racial minority in that he is was born to an ethnically 100% Jewish mother and based upon his Jewish upbringing, outwardly manifests his racial affiliation by donning, among other things, a Star of David necklace such that Defendants knew that Plaintiff was a member of a protected class.

173.     At all times related hereto, Plaintiff was a Board-certified anesthesiologist who had trained at the prestigious Cleveland Clinic and as such he was qualified for the employment Defendants recruited him for in December of 2020, especially since according to Dr. HUTCHENS, Defendants merely sought an anesthesiologist that wasn't "an unmitigated disaster."

174.     Upon discovering he was Jewish, Defendants intentionally discriminated against Plaintiff by, among other things, withholding the employment contract Plaintiff was told to expect prior to the 2020 holidays following his interview, requiring Plaintiff to meet more stringent criteria than other similarly situated anesthesiologists faced before offering him a permanent contract, including, but not limited to requiring unanimous consent and working temporarily as a Locums Tenens employee, requiring him to cancel pre-existing Locums Tenens commitments without sufficient notice in order to receive his permanent contract and by failing to adhere to

Defendants' own policies, procedures and contract obligations when

terminating Plaintiff.

175.     Defendants further subjected Plaintiff to a hostile work environment

by publicly mocking and humiliating Plaintiff Dr. PLANCHARD and by

creating, tolerating and even ratifying anti-Semitic behavior by Plaintiff's

direct supervisors and co-workers such that the workplace became

permeated with discriminatory intimidation, ridicule and insult that was

sufficiently severe or pervasive such as to alter the conditions of the

Plaintiff's employment and create an abusive working environment.

176.     Discrimination at the workplace was so severe and/or pervasive

Defendants knew or should have known about it.

177.     Plaintiff Dr. PLANCHARD suffered an adverse employment action

when he was fired without cause on March 30, 2021, which was confirmed

on or about April 1, 2021, and for cause on April 16, 2021, none of which

conformed to Defendants written policies and procedures nor the contract

between the parties.

178.     At the time Plaintiff suffered this adverse employment action, it was

based upon racial discrimination, which was at a minimum, a motivating

factor and/or a but for cause for the adverse employment action.

179.     Plaintiff was subsequently replaced  by a person outside of his protected class.

180.     Additionally, Plaintiff was treated less favorably than similarly situated non-Jewish anesthesiologists who were not made to work as Locums Tenens employees prior to being presented with their permanent contracts, who were not mocked for being Jewish, who were not forced to cancel prior commitments upon insufficient notice in order to receive a formal contract and who were not told to cancel their insurance 4 days prior to being terminated because they would be receiving benefits imminently.

181.     Any bases claimed by Defendants' for terminating Dr. PLANCHARD are clearly pretextual in that Defendants failed to follow their own formal policies, the articulated reasons for Plaintiff's termination were first presented to Plaintiff in a letter sent to Plaintiff 17 days after he was told he was being terminated "without cause" and said reasons were false and hid discrimination.

182.     As a direct and proximate result of Defendants discriminatory actions, Plaintiff has suffered out of pocket losses, has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including health insurance and life insurance benefits,

183.     Plaintiff is further entitled to punitive damages as a result of

Defendants engaging in discriminatory practices with malice and/or with

reckless indifference to Plaintiff's federally protected rights as set forth in

the statement of facts herein.

## COUNT IV
## RELIGIOUS DISCRIMINATION

184.     As the facts in this Complaint show, Defendants USA

HEALTHCARE and USA HEALTH discriminated against Plaintiff because

of his religion in violation of 42 U.S.C. § 2000e, *et seq.*

185.     The Plaintiff Dr. PLANCHARD is an adherent of the Jewish religion,

which religious faith is protected pursuant to 42 U.S.C. § 2000e, *et seq.*

186.     As part of his religious affiliation, Plaintiff Dr. PLANCHARD

outwardly manifests his faith by, among other things, wearing a Star of

David necklace at all formal occasions including his interview with

Defendants in December of 2020, such that Defendants knew that Plaintiff

was a member of a protected class.

187.     At all times related hereto, Plaintiff was a Board-certified

anesthesiologist who had trained at the prestigious Cleveland Clinic and as

such he was qualified for the employment for which Defendants recruited

him in December of 2020, especially since according to Dr. HUTCHENS,

Defendants merely sought an anesthesiologist that wasn't "an unmitigated disaster."

188.     Upon discovering he was Jewish, Defendants intentionally discriminated against Plaintiff by, among other things, withholding the employment contract Plaintiff was told to expect prior to the 2020 holidays following his interview, requiring Plaintiff to meet more stringent criteria than other similarly situated non-Jewish anesthesiologists faced before offering him a permanent contract, including, but not limited to requiring unanimous consent and working temporarily as a Locums Tenens employee, requiring him to cancel a pre-existing Locums Tenens commitment without sufficient notice in order to receive his permanent contract and by failing to adhere to Defendants' own policies, procedures and contract obligations when terminating Plaintiff.

189.     Discrimination at the workplace was so severe and/or pervasive Defendants knew or should have known about it.

190.     Defendants further subjected Plaintiff to a hostile work environment by publicly mocking and humiliating Plaintiff Dr. PLANCHARD and by creating, tolerating and even ratifying anti-Semitic behavior by Plaintiff's direct supervisors and co-workers such that the workplace became permeated with discriminatory intimidation, ridicule and insult that was

sufficiently severe or pervasive such as to alter the conditions of the Plaintiff's employment and create an abusive working environment.

191.    Plaintiff Dr. PLANCHARD suffered an adverse employment action when he was fired without cause on March 30, 2021, which was confirmed on or about April 1, 2021, and for cause by letter dated April 16, 2021, no instance of which conformed to Defendants written policies and procedures nor the contract between the parties.

192.    At the time Plaintiff suffered this adverse employment action, it was based upon religious discrimination, which was at a minimum, a motivating factor and/or a but for cause for the adverse employment action.

193.    Plaintiff was subsequently replaced by a person outside of his protected class.

194.    Additionally, Plaintiff was treated less favorably than similarly situated non-Jewish anesthesiologists who were not made to work as Locums Tenens employees prior to being presented with their permanent contracts, who were not mocked for being Jewish, who were not forced to cancel prior commitments upon insufficient notice in order to receive a formal contract and who were not told to cancel their alternative insurance 4 days prior to being terminated because they were promised that they would be receiving benefits imminently.

195.     Defendants' claimed bases for terminating Dr. PLANCHARD are
clearly pretextual in that Defendants failed to follow their own formal
policies, the articulated reasons for Plaintiff's termination were first
presented to Plaintiff in a letter sent to Plaintiff 17 days after he was told he
was being terminated "without cause" and said reasons were false and hid
discrimination.

196.     As a direct and proximate result of Defendants discriminatory actions,
Plaintiff has suffered out of pocket losses, has been deprived of job-related
economic benefits, including income in the form of wages and other job-
related benefits, including health insurance and life insurance benefits,

197.     Plaintiff is further entitled to punitive damages as a result of
Defendants engaging in discriminatory practices with malice and/or with
reckless indifference to Plaintiff's federally protected rights as set forth in
the statement of facts herein.

## COUNT V
## RETALIATION

198.     As the facts alleged in this Complaint show, Defendants USA
HEALTHCARE, USA HEALTH, HUTCHENS and PRICE retaliated
against Plaintiff because he verbally reported the pervasive discrimination he
faced while employed with Defendants to Mr. PRICE on April 1, 2021, and

because he demanded that Defendants' policies and procedures, as well as his contractual rights, be followed in a non-discriminatory fashion.

199.     Immediately following Plaintiff's complaint to Mr. PRICE and his request that he be treated under Defendants' policies, procedures and his contract like his non-Jewish peers, Defendants engaged in a campaign of defaming and slandering Plaintiff such that he was unable to secure employment locally or even regionally.

200.     Defendants "black-balled" Plaintiff in the local and regional medical community such that he was unable to secure local employment following his wrongful termination by Defendants.

201.     The timing of the events is circumstantial evidence that Defendants sought to interfere with Plaintiff's employability in the community and surrounding communities to retaliate against him or punish him for having opposed their racist and religiously intolerant treatment of him.

202.     Plaintiff's complaint of racial and religious discrimination and opposition to discriminatory treatment constituted conduct protected under federal anti-discrimination statutes, which conduct caused, was a motivating factor in and/or a but for cause of Defendants' interference with Plaintiff's ability to contract for employment following Defendants' termination of him.

203.     Any reasons Defendants provide for the "black-balling" of Plaintiff is

a pretext or cover story and the real reason is retaliation and discrimination.

204.     To the extent any of the Defendants is determined to be an arm of the

state, which claim by Defendants' Plaintiff disputes, said Defendants'

actions in violation of 42 U.S.C. § 1981 were committed under color of law

as described in 42 U.S.C. § 1983.

205.     As a direct and proximate result of Defendants' discriminatory

actions, Plaintiff has suffered out of pocket losses, has been deprived of job-

related economic benefits, including income in the form of wages and other

job-related benefits, including health insurance and life insurance benefits,

206.     Plaintiff is further entitled to punitive damages as a result of

Defendants engaging in discriminatory practices with malice and/or with

reckless indifference to Plaintiff's federally protected rights as set forth in

the statement of facts herein.

### REQUESTS FOR RELIEF (FEDERAL)

For the reasons described in this Complaint, Plaintiff demands judgment

against Defendants and other specific relief including:

a.   Declaratory judgment that the Defendants violated 42 U.S.C. § 1981,  42

U.S.C. § 1983 and 42 U.S.C. §§ 2000e, *et seq.*

b. Compensatory damages, including back pay and front pay together with interest thereon.

c. Punitive and exemplary damages.

d. Attorneys' fees, expert witness fees and costs of suit pursuant to 42 U.S.C. § 1988.

e. For an Order requiring Defendants to compensate Plaintiff for his mental and emotional distress damages suffered as a result of Defendants' violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983 and 42 U.S.C. §§ 2000e, *et seq*.

f. Prejudgment and post-judgment interest.

g. All other relief to which Plaintiff is entitled and to which the Court otherwise deems just and proper.

<u>STATE CAUSES OF ACTION</u>

**COUNT VI**
**BREACH OF CONTRACT**

207.     As the facts alleged in this Complaint show, Defendants USA HEALTHCARE, USA HEALTH, HUTCHENS and PRICE breached their contract with Plaintiff Dr. PLANCHARD.

208.     The parties entered into a contract titled, "Physician Employment Agreement" with an effective date of February 28, 2021.

209.     Pursuant to the contract terms, Plaintiff Dr. PLANCHARD could only

be terminated in writing, in consultation with Dr. Chang and upon very

specific notice and remediation terms.

210.     At all times relevant hereto, Plaintiff performed all duties which he

was contractually bound to perform.

211.     Defendants breached the contract with Plaintiff Dr. PLANCHARD in

several ways including, but not limited to: not adhering to the contractual

termination requirements specified in the parties' contract, failing to consult

with Dr. Chang prior to terminating Plaintiff, and failing to act fairly and in

good faith in the parties' contractual dealings.

212.     As a direct and proximate result of Defendants' breach of the parties'

contract, Plaintiff has suffered foreseeable incidental and consequential

damages.

213.     Defendants knew or should have known about the type and extent of

damages Plaintiff suffered as a result of their breach of the contract.

## COUNT VII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

214.     As the facts alleged in this Complaint show, Defendants USA

HEALTHCARE, USA HEALTH, HUTCHENS and PRICE intentionally

caused numerous third parties not to enter into prospective contractual relationships for employment with Plaintiff.

215.   Defendants were aware of Plaintiff's existing relationships with Locums Tenens and other third-party medical employment contracting agencies who contacted Defendants following Plaintiff's termination to update their records for Plaintiff.

216.   Defendants were likewise aware of medical establishments in the local Alabama area, Florida and Mississippi with whom Plaintiff sought employment following his wrongful termination by Defendants.

217.   Defendants had knowledge that Plaintiff was attempting to secure future employment as an Anesthesiologist with both the employment contracting agencies and local medical establishments since many of these entities contacted Defendants for information as part of their normal and customary hiring process.

218.   At all times relevant hereto, Defendants intentionally sought to "black-ball" Plaintiff by providing false, disparaging, and defamatory information to these third parties designed to disrupt the prospective employment relationships sought by Plaintiff Dr. PLANCHARD with said third parties.

219.     At all times relevant hereto, Defendants intentionally sought to further

"black-ball" Plaintiff in the local and regional medical communities by

refusing to provide requested information, withholding documents Plaintiff

needed for credentialing as well as references customarily provided in the

industry to prospective employers and/or provided negative references in

order to cause harm to Plaintiff's employability .

220.     As a result of their acts, Defendants directly and proximately caused

economic harm and emotional distress and suffering to Plaintiff.

221.     At all times pertinent hereto, Defendants participated in, authorized

and/or ratified the acts of each and every other Defendant, as well as the

Defendants' employees and agents, which acts were done for and/or in the

line and scope of employment and/or for the Defendants' benefit.

## COUNT VIII
## FRAUD

222.     As the facts alleged in this Complaint show, Defendants USA

HEALTHCARE, USA HEALTH, HUTCHENS and PRICE fraudulently

induced Plaintiff to justifiably rely on promises and representations made by

Defendants who made said promises and representations knowing they were

false.

223.     On or about March 29, 2021, Defendants through their co-Defendant

and agent Mr. PRICE informed Plaintiff he could cancel his marketplace

insurance because he would have USA Hospital benefits beginning April 1, 2021, knowing this representation was false as demonstrated by Mr. PRICE verbally terminating Plaintiff the following day on March 30, 2021.

224.     Plaintiff justifiably relied on Mr. PRICE's representations about insurance and canceled his marketplace insurance, which directly and proximately caused Plaintiff to suffer economic damages and  emotional and mental stress necessitating mental health intervention.

225.     On or about February 28, 2021, Defendants through their co-Defendants and agents Dr. HUTCHENS and Mr. PRICE fraudulently represented, knowing this representation to be false, to Plaintiff he would be provided long term employment with Defendants so long as Plaintiff canceled his pre-existing obligation with Weatherby despite Defendants' knowledge Plaintiff was outside of the 30 cancellation "window."

226.     Canceling his Weatherby obligation without proper notice based on Defendants' representations has been one significant cause of Plaintiff Dr. PLANCHARD being unable to secure further work with Weatherby, which had previously provided Plaintiff with significant additional income.

227.     Plaintiff justifiably relied on Dr. HUTCHENS' and Mr. PRICE's representations made on behalf of themselves as well as their co-Defendants,

which directly and proximately caused Plaintiff to suffer economic damages

and  emotional and mental stress damages.

## COUNT IX
## NEGLIGENT/WANTON HIRING/TRAINING/SUPERVISION

228.     As the facts alleged in this Complaint show, Defendants USA

HEALTH and USA HEALTHCARE negligently and/or wantonly

hired/trained and/or supervised Dr. HUTCHENS and/or Mr. PRICE, as well

as other hospital personnel, who were unfit to supervise other medical

professionals.

229.     As the facts alleged in this Complaint show, Defendants Dr.

HUTCHENS and Mr. PRICE negligently and/or wantonly hired/trained

and/or supervised hospital personnel which created and fostered a

discriminatory and hostile workplace for Plaintiff and other minorities.

230.     Dr. HUTCHENS and Mr. PRICE as well as the employees they hired,

trained and supervised, engaged in ongoing conduct constituting torts

against Plaintiff as recognized under Alabama law including, but not limited

to defamation, libel, slander as set forth in Count VII and fraud as set forth

in Count VI.

231.     Dr. HUTCHENS and Mr. PRICE as well as other employees in their

charge engaged in tortious conduct that was so egregious and pervasive

against Plaintiff and upon information and belief, other minorities, that

Defendants had actual and/or constructive notice or should have known of their employee's tortious conduct and failed to adequately respond to the notice and take adequate stops to remedy the situation.

232.    Defendants and U.S.A. in general are presently the subjects in an investigation related to alleged inappropriate racial and ethnic disparaging demonstrations as well as demeaning, racial, and sexual harassment from numerous administrative members including University Presidents, Department Chairs and most recently allegations against a Women's Coach for sexual harassment of players indicating a widespread and system wide lack of proper training, hiring and supervision at U.S.A. and other Defendant operated businesses and institutions.

233.    As a direct and proximate result of Defendants' negligent/wanton hiring, supervision and/or training Plaintiff suffered economic damages and emotional and mental stress damages.

## COUNT X
## DEFAMATION/LIBEL/SLANDER

234.    As the facts alleged in this Complaint show, Defendants USA HEALTHCARE, USA HEALTH, HUTCHENS and PRICE have intentionally and/or recklessly published false statements to third party prospective employers including online traveling anesthesiology agency

employment companies including, but not limited to Locums Tenens, Weatherby Healthcare and Global Medical Staffing as well as numerous local and regional hospitals.

235.    Said published statements were not opinions but purported to be facts about Plaintiff pertaining to his employment which caused a "black-balling" of Plaintiff, preventing him from obtaining employment with these institutions, resulting in economic, mental and emotional harm.

236.    Said false representations purporting to be facts included, but are not limited to, claiming Plaintiff Dr. PLANCHARD was terminated while in the employ of Locums Tenens rather than on April 16, 2021, the date of termination in the only written notice provided to Plaintiff, providing bad "word of mouth" about Plaintiff to prospective employers, claiming complaints had been made about Plaintiff in complete contradiction of Mr. PRICE's statements to Plaintiff, claiming Plaintiff was "bipolar" and otherwise disparaging Plaintiff's fitness as a medical doctor and anesthesiologist.

237.    During his employment with Defendants, Defendants also intentionally and/or recklessly made false and defamatory statements purporting to be facts claiming Plaintiff was a "KIKE", "only in it for the

money", loud and obnoxious and other derogatory characteristics of the negative, stereotypical Jewish person.

238.     Plaintiff is informed and believes said false and defamatory statements took place from the time he interviewed with Defendants on or about December 9, 2020, through the present.

239.     As a direct and proximate result of Defendants false, defamatory remarks, Plaintiff Dr. PLANCHARD has been denied employment opportunities and has suffered ongoing economic, emotional and mental damages.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/OUTRAGE

240.     As the facts alleged in this Complaint show, Defendants USA HEALTHCARE, USA HEALTH, HUTCHENS and PRICE have engaged in conduct so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society which conduct intentionally and/or recklessly caused Plaintiff emotional distress so severe that no reasonable person could be expected to endure it.

241.     The Jewish people have long endured oppressive hatred and repeated attempts at genocide through the ages such that discrimination against them carries the weight of historical oppression.

242.    At all times pertinent hereto extending over the course of many

months since December of 2020, Defendants have engaged in a pattern of

activity involving a great many persons including co-workers, supervisors

and the varied individuals who have attempted to "black-ball" Plaintiff in the

local and regional community.

243.    As a direct result of the long history of vile discrimination, hatred and

genocide attempts directed toward the Jewish people in conjunction with the

pervasive pattern of discrimination and oppression directed toward Plaintiff,

Defendants should have known Dr. PLANCHARD was likely to suffer

extremely serious repercussions and emotional/mental distress as a result of

their outrageous conduct.

244.    At all times relevant hereto, the outrageous actions directed toward

the Plaintiff were directed toward an illegal purpose, discrimination based on

race and religion, which is prohibited by Title VII and §§ 1981 and 1983 of

the Civil Rights Act.

245.    Defendants' extreme and outrageous discriminatory conduct has

continued beyond Plaintiff's employment with Defendants such that Dr.

PLANCHARD has not been able to find relief from it and which has forced

him to seek employment away from Mobile, his home.

246.     In addition to economic damages, Plaintiff has incurred substantial medical costs as a result of Defendants' outrageous conduct.

247.     The toll of the stress and strain to Plaintiff proximately caused by Defendants' extreme and outrageous conduct has forced Plaintiff into therapy and has required Plaintiff to seek ongoing mental health intervention.

## REQUESTS FOR RELIEF (STATE)

For the reasons described in this Complaint, Plaintiff demands judgment against Defendants and other specific relief including:

a.  Compensatory damages, including compensation for economic loss and mental and emotional distress.

b.  Punitive and exemplary damages.

c.  Attorneys' fees and costs of suit.

d.  All other relief to which Plaintiff is entitled.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted this __10__ day of February, 2022.

_____
JEFFREY A. PLANCHARD

**STATE OF ALABAMA**
**COUNTY OF MOBILE**

I, the undersigned Notary Public, in and for said State and County, hereby certifies that JEFFREY A. PLANCHARD, whose name is signed to the foregoing Amended Complaint, and who is known to me, acknowledged before me on this date that, being informed of the contents of said pleading, executed the same voluntarily on the day the same bears date.

Given under my hand and seal this 10th day of February, 2022.

NOTARY PUBLIC
My Commission Expires: 4/16/25

> MIYA WILKERSON
> Notary Public
> Alabama State at Large

/s/ Christine Hernandez
Christine Hernandez (HER051)
/s/ Deborah A. Mann
Deborah A. Mann (MAN072)
The Hernandez & Associates Firm, LLC
Attorneys for Plaintiff
PO BOX 66174
MOBILE, AL 36660-1174
(251)479-1477 OFFICE
(251)650-3843 FAX
Christine@equalizingjustice.com
Deborah@equalizingjustice.com

Of Counsel:
The Hernandez & Associates Firm, LLC
Attorney for Plaintiff
PO BOX 66174
MOBILE, AL 36660-1174
251)479-1477 OFFICE
 (251)650-3843 FAX
Christine@equalizingjustice.com